In the Matter of the Petition of AMERICAN FREIGHT SYSTEMS, INC., 9393 W. 110th St, Overland Park, KS 66210 for a Certificate of Public Convenience and Necessity as a Regular Route Common Carrier of Freight.

No. C5–85–1504.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Robert D. Gisvold, Minneapolis, for appellant American Freight.

Hubert H. Humphrey, III, Atty. Gen., Ann Seha, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Transp. Regulation Bd.

Considered and decided by SEDGWICK, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

American Freight Systems Inc. appeals from an order of the Minnesota Transportation Regulation Board denying its application for a certificate of public convenience and necessity as a regular route common carrier of freight over fifteen designated routes within Minnesota. American Freight contends the Board's decision is arbitrary and capricious and not supported by substantial evidence. We affirm.

## FACTS

American Freight holds nationwide Interstate Commerce Commission authority to transport general commodities. It transports freight moving in interstate commerce in Minnesota and had terminals in Duluth, Fergus Falls, Hibbing, Minneapolis/St. Paul, Montevideo, Owatonna, St. Cloud and Windom. Its terminals at Fargo and Grand Forks, North Dakota, Milbank, South Dakota, and La Crosse, Wisconsin, are used to serve nearby Minnesota locations. American Freight has no Minnesota intrastate authority to transport freight.

American Freight petitioned the Board for regular route common carrier authority to ship general commodities over fifteen specified routes and authority to ship to other points in Minnesota as off-route points. Essentially it seeks intrastate authority to provide service to, from, and between all points in Minnesota. It acknowledges the authority it is seeking is broad in scope and that no comparable authority has ever been issued.

Eight regular route common carriers filed petitions to intervene and protest. Hearings were held in October and November, 1984. Fifty-six shippers testified. Each uses American Freight for interstate shipments and supports its petition for intrastate authority. Most expressed satisfaction with current intrastate service. In general, the shippers support American Freight's petition because they would then be able to get direct line service to all points in Minnesota and because they could commingle state and interstate freight in American Freight's trucks, thereby lessening dock congestion. Many shippers emphasized the importance of overnight service to their businesses.

Protestant Murphy Freight Lines, Inc. holds regular route common carrier authority to transport freight over approximately 88 routes primarily in the southern one-third of Minnesota, between the Twin Cities and the Fergus Falls/Moorhead area, and from the Twin Cities to Duluth. It makes overnight deliveries 92 percent of the time, its trucks are loaded to approximately 60 percent of capacity when they leave the St. Paul terminal, and it has sustained operating losses each of the last three years.

Protestant McDonough Truck Line, Inc., holds intrastate authority as a regular route common carrier in the Twin Cities freight zone, and Rice, Steele and Dakota counties. It provides same day and next day service to all points in its service area.

Its 1983 revenues were less than its 1982 revenues.

Protestant Morrell Transfer holds regular route common carrier authority to transport freight over several alternate routes between the Twin Cities and Forest Lake, between the Twin Cities and Isle, and between the Twin Cities and Foley. It also holds limited interstate authority. It serves all but three points in its service area on a next day basis.

Protestant Century Motor Freight, Inc. holds regular route authority to transport freight between the Twin Cities, Bemidji, Duluth, International Falls, and numerous Iron Range cities. It has laid off a number of employees and many of its trucks are idle. Its revenues for the first nine months of 1984 were down 50 percent from those for the same period in 1981. It suffered net operating losses in 1982 and 1983, but had a profit margin of 2.5 percent during the first nine months of 1984.

Protestant Lakeville Motor Express holds regular route authority for a number of routes between the Twin Cities and La Crescent, Austin, Spring Valley, Albert Lea, Marshall, Sleepy Eye, Montevideo, Duluth, Grand Rapids, Hibbing and Virginia. It also holds interstate authority to serve the entire state. During the first six months of 1984 it was able to make next day delivery for 98 percent of its shipments. It serves a number of the shippers who testified in support of American Freight.

Protestant Hyman Freightways, Inc. holds regular route common carrier authority to transport freight over approximately 47 routes spanning much of the southern two-thirds of Minnesota. It also has two northern routes and significant interstate authority. It makes next day deliveries 88 percent of the time.

Protestant Twin Cities Freight holds regular route common carrier authority to haul freight over several designated routes between the Twin Cities and Moorhead, East Grand Forks, Crookston and Detroit Lakes. It makes next day deliveries for 77 percent of the shipments from the Twin Cities. It sustained a loss for the first nine months of 1984.

Protestant August Deike Transfer, Inc. holds regular route common carrier authority to serve several specified routes between the Twin Cities and numerous points in south central Minnesota, and makes next day deliveries for 99 percent of its shipments. It has sustained revenue losses in the past two years.

The administrative law judge made findings with regard to each shipper and each protestant. He concluded that American Freight is (1) fit and able to conduct all the proposed transportation services, (2) public convenience and necessity requires the granting of the regular route common carrier authority requested by American Freight, and (3) "the adverse affects upon competing carriers which may result from the granting of regular route common carrier authority to the petitioner is offset by the benefits to be realized by the shipping public through the grant of such authority."

The administrative law judge analyzed public convenience and necessity in light of three criteria adopted by the Minnesota Public Utilities Commission in *In the Matter of G.W.N.C.O. Transport Inc.*, PC 113/A–81–1107 (Oct. 26, 1982):

1. A finding that existing service is inadequate.

2. There is adequate existing service but the proposed new service would offer additional benefits not presently available to the shipping public.

3. Existing service is adequate but is so unduly concentrated in a single area or a few carriers as to render the public vulnerable to abuses characteristic of absolute monopoly.

The administrative law judge determined that neither the first nor the third criteria were met but that the proposed new service would offer additional benefits not presently available to the shipping public. In analyzing the first criteria he noted that shippers

receive reasonably adequate service from presently authorized carriers. The great majority of petitioner-supporting shipper witnesses expressed favorable comments about existing services.

He further noted that the occasional complaints were not sufficient to impeach protestants' showing of a high incident of next day service deliveries and satisfactory claim settlement procedures. The administrative law judge found no support for the third criteria but found that the offering of direct service to all points in Minnesota and the ability to commingle intrastate freight with interstate freight with the resulting reduction in dock congestion could be deemed to be a benefit which would satisfy the second criteria. The administrative law judge added that, because of the relatively high number of overnight deliveries made by existing carriers, American Freight's promise of improved next day service is too conjectural to serve as a basis for granting the petition.

The Board adopted the findings made by the administrative law judge and concluded that, while American Freight is fit and able to perform the transportation services it proposed, it did not show that public convenience and necessity warrant granting the petition. The Board also analyzed public convenience and necessity under the three *G.W.N.C.O.* criteria and agreed with the administrative law judge that existing service is reasonably adequate. It did not agree with the administrative law judge that the benefits identified by the administrative law judge support a finding of public need for American Freight's services. It concluded that the ability to commingle with a potential lessening of dock congestion and direct line service are both benefits which are derived from a grant of interstate authority and are not related to the quality or quantity of service which would be offered by American Freight.

## ISSUES

1. Did the Board act arbitrarily and capriciously when it adopted the administrative law judge's findings but not his recommendation?

2. Is the Board's determination that American Freight did not make a showing of public convenience and necessity supported by substantial evidence on the record?

## ANALYSIS

Judicial review of the Board's decision is governed by the Administrative Procedures Act, Minn.Stat. § 14.63–.69 (1984). *See Appeal of Signal Delivery Service, Inc.*, 288 N.W.2d 707, 709 (Minn.1980) (citations omitted). This court may reverse the Board's decision only if we find its findings, inferences, conclusions or decisions are:

> (a) In violation of constitutional provisions; or
>
> (b) In excess of statutory authority or jurisdiction of the agency; or
>
> (c) Made upon unlawful procedure; or
>
> (d) Affected by other error of law; or
>
> (e) Unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) Arbitrary or capricious.

Minn.Stat. § 14.69.

## I.

The Board in this case adopted the findings of the administrative law judge but, on the basis of the findings arrived at a decision contrary to one recommended by the administrative law judge. American Freight contends the Board acted arbitrarily and capriciously by not adopting the recommendation of the administrative law judge.

This case is unlike *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466 (Minn. 1984) where the Board rejected the administrative law judge's findings and recommendations without comment, and this court said that the failure of the Board to explain its reasons on the record "evinces the agency's desire to exercise its will and not its judgment." *Id.* at 472. Here the Board explained its reasons for rejecting

the administrative law judge's recommendation.

It is not only within the agency's prerogative to reject an administrative law judge's recommendations but they have been encouraged to employ

> their expertise to reach independent decisions and not to simply "rubber stamp" the findings of [an administrative law judge].

*City of Moorhead v. Minnesota Public Utilities Commission,* 343 N.W.2d 843, 846 (Minn.1984). Administrative law judges'

> functions are subordinate to a reviewing agency's * * * power. [An administrative law judge] presides at meetings and makes recommendations for decision. But the agency is not bound by the findings and recommendations of the [administrative law judge]. K. Davies, *Administrative Law Text,* § 1007 (3rd ed.1972). In this sense, the relationship differs from that of an appellate court reviewing the lower court's findings of fact: an agency could make new findings and decide contrary to the [administrative law judge's] recommendations. *Id.* at § 10.-04. [An administrative law judge] takes no power away from an agency.

*Id* at 847. (quoting *Hymanson v. City of St. Paul,* 329 N.W.2d 324, 326–27 (Minn. 1983)).

■ We conclude that because the Board explained its reasons for rejecting the administrative law judge's recommendations, it did not act arbitrarily and capriciously by adopting the administrative law judge's findings but not his recommendation.

## II.

American Freight also contends the Board's decision that it did not make a showing of public convenience and necessity is not supported by substantial evidence. It urges us to adopt the administrative law judge's reasoning.

■ Minn.Stat. § 221.071 (1984) governs the issuance of regular route common carrier permits. It provides in part:

> If the board finds from the evidence that the petitioner is fit and able to properly perform the services proposed and that public convenience and necessity require the granting of the petition or part of the petition, it shall issue a certificate of public convenience and necessity to the petitioner. In determining whether a certificate should be issued, the board shall give primary consideration to the interests of the public which might be affected, to the transportation service being furnished by a railroad which may be affected by the granting of the certificate and to the effect which the granting of a certificate will have upon other transportation services essential to the communities which might be effected by the granting of the certificate.

*Id.* A determination of public convenience and necessity under this statute is an issue of fact to be determined by the Board. *See Quinn Distributing Co. v. Quast Transfer Inc.,* 288 Minn. 442, 448, 181 N.W.2d 696, 700 (1970). As such it may be reversed by this court only if not supported by substantial evidence. In reviewing the Board's determination that American Freight did not demonstrate that public convenience and necessity require the granting of a certificate we must

> refrain from substituting [our] judgment concerning the inferences to be drawn from the evidence for that of the agency. Unless there is manifest injustice, this limitation applies even though it may appear contrary inferences would be better supported or we would be inclined to reach a different result, were we the triers of fact.

*Id.* (quoting *Gibson v. Civil Service Board,* 285 Minn. 123, 126, 171 N.W.2d 712, 715 (1969)).

Not only must we defer to the factfinding process of the Board, we are constrained by a lack of a fixed definition of public convenience and necessity which is applicable to all cases.

The term "convenience and necessity" is an elastic one for which no definite rule can be stated that will apply to all

cases. Each case must stand on its own facts, and the commission must be given some latitude in applying the yardstick. *Id.* 288 Minn. at 451, 181 N.W.2d at 701.

American Freight argues that the combined benefits of commingling, relief of dock congestion, direct services to all points in Minnesota, and next-day delivery to all Minnesota points satisfies the second *G.W.N.C.O.* criteria by offering additional benefits not now available.

Initially we observed that there has been no finding that American Freight could offer improved next day delivery service. In analyzing potential benefits the administrative law judge stated "the promise of an improved next-day delivery is too conjectural to serve as a basis for granting the petition for regular route authority." The Board agreed. Without a finding that next-day service will be improved, there is no basis for considering it as a potential benefit.

We next observe that none of the parties challenged the use of the three *G.W.N.L.O.* criteria for analyzing public convenience and necessity. We neither endorse nor criticize the use of the criteria. We conclude that, analyzed either under these criteria or case law interpreting "public convenience and necessity," the Board's determination that American Freight did not show that public convenience and necessity require the granting of its petition is supported by substantial evidence.

The Board determined that benefits do not include those which accrue, not because of an applicant's unique ability to meet unmet need, but solely because there are certain problems which, while real, are inherent in the regulatory scheme. Specifically it determined a need for intermingling, reduction in dock congestion, and direct line service has not come about because of some lack on the part of protestant shippers or because of an increase in business activity.

The need for intermingling with the resulting potential to reduce dock congestion exists simply because the Interstate Commerce Commission regulates interstate shipping and the State regulates intrastate shipping. The claimed service improvement which American Freight proposes to offer is not a service capability unique to American Freight but rather is an improvement which could be offered by any shipper who has interstate authority and applies for intrastate authority.

A similar situation exists with regard to "need" for direct line service. No carrier's regular route authority covers the entire state, and thus a certain number of "innerline movements" or joint services by two or more carriers are unavoidable. These innerline movements are a direct result of a regulatory system which requires a shipper to establish need before commencing to serve an area. Direct line service, service improvement which American Freight proposes to offer, would merely be the natural consequence of a grant of statewide authority.

■ The Board has the latitude to determine that convenience and necessity do not encompass those needs present solely because of the inherent nature of the regulatory scheme. *See Quinn,* 288 Minn. at 451, 181 N.W.2d at 701. Similarly, it has the latitude to determine that the benefits which exist solely because of the problems inherent in the regulatory scheme are not benefits under *G.W.N.C.O.* Since American Freight did not demonstrate any other needs, the Board's determination that American Freight has not shown that public convenience and necessity warrant granting its petition is supported by substantial evidence.

■ Finally, American Freight contends that the Board's denial of its petition constitutes an illegal restraint on trade because the Interstate Commerce Commission has, in effect, preempted the Board's strict regulation by fostering competition. American Freight cites no authority for this proposition and there are no findings to support it. This issue was not raised by American Freight until oral argument before the Board, and thus we will not consider the issue on appeal.

## DECISION

The Board did not act arbitrarily or capriciously when it adopted the administrative law judge's findings but not his recommendation. The Board's finding that American Freight did not make a showing of public convenience and necessity is supported by substantial evidence in the record.

Affirmed.