**In the Matter of the Petition of HYMAN FREIGHTWAYS, INC., 2380 Wycliff Rd., St. Paul, MN 55114, for an Extension of its Regular Route Common Carrier Certificate.**

No. C1–92–319.

Court of Appeals of Minnesota.

Aug. 18, 1992.

Robert D. Gisvold, Kalina, Wills, Woods, Gisvold & Clark, Minneapolis, for relator Hyman Freightways.

Margaret Hendrickson, Anu Seam, Asst. Attys. Gen., St. Paul, for respondent Minnesota Transp. Regulation Bd.

Richard L. Gill, Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondent Morrell Transfer, Inc.

Considered and decided by PARKER, P.J., and NORTON and FOLEY, JJ.

## OPINION

FOLEY, Judge.*

Appellant Hyman Freightways, Inc. challenges denial of its petition to increase the number of towns served in central Minnesota as a regular route common carrier. We affirm.

## FACTS

Hyman Freightways, Inc., the largest trucking firm in the state, petitioned the Minnesota Transportation Regulation Board for an extension of authority to serve an area of central Minnesota as a regular route common carrier on a daily basis. Hyman requested authority to serve Sauk Rapids, Milaca, Mora, Hinckley, Princeton, Taylors Falls, and various intermediate points. Hyman proposed to provide same-day pick-up and delivery over the requested routes.

Only Morrell Transfer, Inc., a relatively small, family-owned carrier, presently serves this area as a regular route common carrier. Hyman, however, serves the area as an interstate carrier and as an irregular route common carrier, i.e., it may solicit and carry individual loads of 500 pounds or more. Other carriers also have regular and irregular route carrier permits in the area, except for the communities of Princeton and Milaca.

The Board denied Hyman's petition and Hyman appeals.

## ISSUE

Did the Minnesota Transportation Regulation Board err in not granting appellant's petition for increased regular route common carrier authority?

## ANALYSIS

1. *Standard of Review*

The parties agree that the Administrative Procedure Act determines the scope of review. Minn.Stat. § 14.69 (1990). They, however, disagree on the proper standard of review. Appellant argues for "an independent examination of the record," which respondents interpret as an argument for de novo review. De novo review is not the appropriate standard.

Agency decisions are presumed correct and deference is shown to agency expertise. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). How and why the decisions were made is to be thoroughly reviewed, however. *Id.* at 825. Quasi-judicial decisions must be supported by substantial evidence. *Hibbing Taconite Co. v. Minnesota Pub. Serv. Comm'n*, 302 N.W.2d 5, 9 (Minn.1980); *see* Minn.Stat. § 14.69. Appellant has the burden to establish that agency findings are not supported by the evidence considered in its entirety. *Reserve Mining Co.*, 256 N.W.2d at 825.

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

[A]n agency determination is arbitrary and capricious when it represents the agency's will rather than its judgment.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"An agency must either conform to its prior norms and decisions or explain the reason for its departure from such precedent."

*Central Telephone Co. v. Minnesota Pub. Utils. Comm'n*, 356 N.W.2d 696, 701 (Minn.App.1984) (quoting *Peoples Natural Gas Co. v. Minnesota Pub. Utils. Comm'n*, 342 N.W.2d 348, 352, 353 (Minn. App.1983), *pet. for rev. denied* (Minn. Apr. 24, 1984)); *see also Markwardt v. State Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.1977).

### 2. *Public Convenience and Necessity*

Minn.Stat. § 221.071 (1990) lists the general criteria the Transportation Regulation Board must meet in reviewing petitions for additional authority. It provides that if a petitioner is fit and able and that public convenience and necessity require it, a petition should be granted. *Id.* In making its evaluation, the Board is to give "primary consideration" to the interests of the public and the impact on rail service and other essential transportation services in the area. *Id.* The supreme court has held that a determination of public convenience and necessity is an issue of fact. *Quinn Distributing Co. v. Quast Transfer, Inc.*, 288 Minn. 442, 448, 181 N.W.2d 696, 700 (1970).

■ Prior to authority being transferred to the Board, the Public Utilities Commission, relying on *GWNCO Transport Inc.*, PC 113/A–81–1107 (1982), identified the following factors as controlling:

1) If existing service is inadequate, additional service sufficient to correct the deficiency must be granted;

2) If service is adequate, the proposed service must offer material improvements in service; and

3) If new service would produce a desirable effect on competition by increasing an unduly low concentration of carriers, a petition may be granted.

■ We hold that these factors represent a reasonable interpretation of the directive in section 221.071 that a petition should be granted when public convenience and necessity require it. We also note that where an agency makes a reasonable interpretation of a statute, it is not our role to change it but the role of the legislature or the supreme court. *See St. Paul Area Chamber of Commerce v. Minnesota Pub. Serv. Comm'n*, 312 Minn. 250, 262, 251 N.W.2d 350, 357 (1977).

In analyzing whether material service improvements are being proposed, the board consistently has used the following three factors to compare the levels of service offered by the parties:

1) time in transit as a measure of speed of service;

2) incidence of damage to shipments as a measure of quality of service; and

3) claims handling performance as a measure of efficiency and fairness.

*E.g., Petition of Lakeville Motor Express*, RRCC 50/E–83–387 (1984).

### 3. *Hyman Petition*

■ The "primary considerations" under the statute impact on other transportation services in the area, including whether there is sufficient traffic to support an additional carrier, and the interests of the public. Minn.Stat. § 221.071. In adopting the Administrative Law Judge's report and recommendation, the Board concluded:

> [N]one of the involved points generated even one intrastate shipment per day. This is insufficient to support an extension of authority.

It also stated:

> The record supports a determination that if Hyman's petition were granted, its gain would be Morrell's loss, with most of [the] loss coming from the primary sources of its current revenues in Princeton and Milaca. The deterioration of the scope and quality of service by existing carriers would be contrary to the public interest.

In Finding 105, the Board determined: Despite the small volume of intrastate shipments at the involved points, Morrell

has provided 98 percent same-day or overnight service.

Because Morrell's service was determined to be adequate, much of the Board's analysis addresses whether additional service offers material improvements in service, the second *GWNCO* factor. The Board explained its reasoning regarding time in transit:

[T]he Board agrees with the ALJ that Hyman's claims that it could reduce reliance on private carriage by providing same-day service was speculative. Hyman already serves many out-state points within Minnesota and it does not provide same-day service between those points. Shipper claims that it would reduce private carriage were based on the availability of same-day or direct service. * * * Even if the avoidance of private carriage were held to be a service improvement in principle, the Board is unable to find from the record that the proposed service would bring about any reduction in private carriage.

The ALJ found:

Hyman provided no traffic studies documenting its level of overnight service to intrastate shippers or its incidents of shipment damage.

Thus, instead of competing on incidence of damages or claims handling, Hyman's petition suggests other types of "improvements," which the Board analyzed as follows:

As the ALJ determined, the proposed "service improvements" consisted of avoidance of interline movements, the availability of "complete service" and the avoidance of private carriage. These "improvements" are inherent in any petition for extension of regular route authority by the holder of extensive authority such as Hyman. The Board rejected the principle that elimination of limitations inherent to the regulatory system constitute service improvements warranting extensions of regular route authority in *Petition of American Freight Sys., Inc.*, RRCC 696A–83–519 (1985), *aff'd. Petition of American Freight Systems,*

*Inc.*, 380 N.W.2d 191 [192] (Minn.App. 1986).

\* \* \* \* \* \*

The Board likewise concurs in the ALJ's reasoning and findings concerning the availability of terminals in close proximity, reduction in dock congestion, spotting of trailers, and electronic data interchange as [being conveniences for shippers, but not necessities.]

The Board analyzed these and related factors in *Petition of American Freight Sys., Inc.*, RRCC 696A–83–519 (1985) and *Hyman Freightways, Inc.*, RRCC 464/E–88–292 (1990) and rejected them as "improvements." The reasoning is that where a system of regulation exists which prohibits all carriers from operating in all locations, "interlining" (transfer of goods from carrier to carrier en route to a given destination) and lack of "complete service" (essentially the same) by one carrier are inherent in the system. *Petition of American Freight Systems, Inc.*, 380 N.W.2d 192, 197 (Minn.App.1986).

Further, any "improvements" which result from a reduction in these characteristics do not result from a carrier's merit but occur only where a petitioner already has widespread authority, thus, favoring large operators, regardless of quality. *Petition of American Freight Systems, Inc.*, RRCC 696A–83–519 (1985), *aff'd Petition of American Freight Systems, Inc.*, 380 N.W.2d 192 (Minn.Ct.App.1986). Likewise, if fewer transfers of goods among carriers are necessary because one carrier has authority to deliver to more destinations, dock congestion would be reduced but, again, only because of the widespread shipping authority of a given carrier and not as a result of carrier merit. *Id.* This is a David and Goliath situation where longstanding statutory interpretation mandates that David will win.

Appellant also argues that the Board acted in an arbitrary and capricious manner, arguing that others in similar situations had been granted authority to operate. Appellant cites *August Deike Transfer, Inc.*, RRCC 578/E–87–565 (1987), *Morrell Transfer, Inc.*, RRCC 405/E–86–553 (1987),

and *New Ulm Freightlines, Inc.*, RRCC 649–A–75–24 (1979). In each of the cases cited, however, the service of the carrier already operating was determined to be inadequate, thus falling under the first factor in *GWNCO* rather than the second. Further, unlike the present case, in each case cited, there was a finding that the addition of another carrier would not jeopardize the viability of the carrier or carriers already serving the area.

Additionally, as respondent Board observes, where service was adequate and available traffic low, the Board did not grant the petition of a second carrier, even though the area was being served by only one regular route carrier. *Lakeville Motor Express*, RRCC 50/E–88–131 (1989).

## DECISION

We hold that appellant's proposed "improvements" in service result merely from appellant's broad existing authority and not from carrier merit and, therefore, do not constitute improvements warranting an extension of regular route authority.

Affirmed.