In the Matter of the Application of BURLINGTON NORTHERN RAILROAD CO. ("Applicant"), 176 East Fifth St., St. Paul, MN, for Authority to Transfer Agency Service for the Brainerd, MN, Agency to its Centralized Service Agency at Superior, Wisconsin.

No. C4–94–822.

Court of Appeals of Minnesota.

Oct. 11, 1994.

Hubert H. Humphrey, III, Atty. Gen., Margaret E. Hendriksen, Asst. Atty. Gen., St. Paul, for Minn. Transp. Regulation Bd.

Alfonse J. Cocchiarella, Spence, Ricke & Thurmer, P.A., St. Paul, for Burlington Northern R. Co.

Charles A. Collins, Philip A. Shepherd, Collins & Ingebritson, P.A., Minneapolis, for Transportation Communication Int'l Union.

Considered and decided by PARKER, P.J., and KALITOWSKI and JONES,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn.Const. art. VI, § 10.

## OPINION

PARKER, Judge.

Burlington Northern Railroad Co. petitioned to transfer agency service from Brainerd, Minnesota, to Superior, Wisconsin. After receiving notice, the Transportation Communication International Union (TCIU) objected to the transfer. An administrative hearing was held. The administrative law judge (ALJ) issued findings approving and recommending the transfer. The TCIU filed exceptions to the ALJ's findings and recommendation. After hearing oral arguments, the Minnesota Transportation Regulation Board (Board) issued an order adopting the ALJ's findings. The TCIU appeals from the Board's order by writ of certiorari. We affirm.

## FACTS

Burlington operates railroad lines in Minnesota and Wisconsin. Several agency stations serve these lines. Burlington staffs an agency in Brainerd, Minnesota, which operates eight hours per day, seven days per week. It serves 14 customers. One full-time clerk staffs the station Monday through Friday. The only other regular employee is a relief clerk who staffs the station on weekends and when the full-time clerk is on vacation. A third clerk provides periodic relief when the others are unavailable. The Brainerd agency is a profitable operation.

Burlington petitioned the Board to transfer the Brainerd agency service to a larger, centralized agency station located in Superior, Wisconsin. The Superior station operates 24 hours per day, seven days per week, and has a manager and a staff of 50 employees.

Burlington contacted and provided notice of the transfer to each Brainerd agency customer. The TCIU filed a timely objection to the transfer. An administrative hearing was scheduled. No customers objected within the 20–day objection period prior to the scheduled hearing. One customer, Trus

Joist MacMillan, submitted a letter on the date of the hearing voicing concerns about the transfer. Four customers indicated no objection to the transfer. Potlach Corporation, which accounts for 75 percent of the Brainerd agency's business, supported the transfer.

At the administrative hearing, a Burlington customer-support manager testified that the Brainerd agency serves as an intermediary between customers and other Burlington offices. The Brainerd clerks send customer shipment information to other stations in order to facilitate railroad car distribution. The clerks also trace cars and send customer billing information to the Superior and Fort Worth, Texas, stations.

Len Forciea is a customer service manager for Burlington in charge of both the Brainerd clerks and the Superior clerks. He testified that the Brainerd clerks are responsible for ordering boxcars for customers. Most boxcars are stored in Superior and sent to Brainerd when requested. Customers telephone the Brainerd clerks, who in turn telephone the Superior clerks to request the boxcars. Brainerd clerks also assess demurrage fees and notify customers about scheduling information. They sometimes receive hazardous materials documents and inventory lists from customers. There is no face-to-face customer contact at the Brainerd station. All contact is by telephone or by mail.

Forciea testified that upon transfer to Superior, Burlington will establish a toll-free telephone number. Customers will contact the Superior station directly to order boxcars, arrange payment of demurrage fees, and obtain shipment information. The Superior station will receive bills, invoices, inventory lists, and hazardous materials documents by facsimile machine or by mail. If face-to-face customer contact is necessary, a Burlington employee will be dispatched from the Superior station to respond to questions and solve problems.

Roger Griffin is a trainmaster for Burlington in charge of engineers, conductors, and brakemen. Griffin described the procedures for train inspections and for the reporting of incidents. He testified that Brainerd clerks have no responsibility for the inspection or reporting of incidents. The clerks observe trains as they "roll by" to look for smoke or sparks, but they are not trained to assess safety or defects. Each train crew is responsible for inspecting its train. Griffin testified that the Superior station will maintain hazardous materials documents, and the transfer of functions from Brainerd to Superior will have no effect on operating employees, other than requiring use of a facsimile machine.

The ALJ found that the transfer is part of a larger consolidation plan whereby Burlington will eliminate many manual processes that can be performed by modernized procedures. The ALJ also found that safety procedures, incident reporting, and customer service will not be affected by the transfer. The Board adopted the ALJ's recommendation for the transfer, with the modification that Burlington shall not reduce the quality of service provided to affected customers. The TCIU appeals from the Board's order by writ of certiorari.

## ISSUE

I. Does substantial evidence support the Board's finding that transfer of Burlington's agency service will not substantially reduce safety, health, or welfare of the railroad's customers, its employees, or the public?

II. Did the Board properly define "agency service" and properly conclude that transfer of Burlington's agency service does not negatively affect public convenience and necessity?

## DISCUSSION

### Scope and Standard of Review

The scope of judicial review of the Board's decision is governed by the Administrative Procedure Act. Minn.Stat. §§ 14.63–.69 (1992). *See In re Am. Freight Sys., Inc.,* 380 N.W.2d 192, 195 (Minn.App.1986). This court may reverse or modify the Board's order only if the findings, inferences, conclusions, or decisions are

(a) In violation of constitutional provisions; or

(b) In excess of statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary and capricious.

Minn.Stat. § 14.69 (1992).

The criteria for permitting the transfer of a railroad agency service involve a "public convenience and necessity" determination under section 219.85. That statute provides, in relevant part:

> Agency service at common carrier railroad stations must be that required by the public convenience and necessity. No station may be abandoned nor agency service reduced, discontinued, established, reestablished, or expanded without the approval of the board after public notice and opportunity for hearing is afforded. The board shall consider, if submitted, whether the abandonment or reduction will not substantially reduce the level of safety, health, or welfare of the railroad's customers, its employees, or the public.

Minn.Stat. § 219.85 (1992).

When determining public convenience and necessity under section 219.85, whether facts are supported by the evidence involves a quasi-judicial determination that is subject to the substantial evidence standard of review. *In re Burlington N.R.R.*, 359 N.W.2d 288, 290 (Minn.App.1984). This court examines the entire matter in controversy to determine whether evidence reasonably supports the findings of fact upon which the order is based. *Rock Island Motor Transit Co. v. Murphy Motor Freight Lines, Inc.*, 239 Minn. 284, 289, 58 N.W.2d 723, 727 (1953). The burden is on relator to prove that the Board's findings are not supported by the evidentiary record. *See Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977).

A public convenience and necessity determination also requires the interpretation of section 219.85. Generally, on matters of statutory interpretation, this court is not bound by the determination of an administrative agency. *Arvig Tel. Co. v. Northwestern Bell Tel. Co.*, 270 N.W.2d 111, 114 (Minn.

1978), *pet. for reh'g denied* (Minn. Oct. 11, 1978). The agency's construction of a statute may be entitled to some deference, however, when the interpretation is one of longstanding application. *Id.*

Interpreting the terms "agency service" and "public convenience and necessity" under section 219.85 requires expertise beyond what the general public or the judicial system is equipped to provide. This determination requires the vesting of a wide range of discretion in the administrative agency to draw conclusions based on the agency's expertise and "from the great variety of circumstances which may exist in specific instances." *In re Burlington N.*, 359 N.W.2d at 289 (citing *Indianhead Truck Line, Inc. v. United States*, 253 F.Supp. 186, 187–88 (D.Minn.1966)).

### I. Findings on Public Convenience and Necessity

The Board adopted the ALJ's findings that safety and welfare will not be affected by the proposed transfer from Brainerd to Superior. Substantial evidence supports those findings.

Trainmaster Roger Griffin testified that Brainerd agency clerks have no specialized knowledge or training with respect to safety or the assessment of defects. Brainerd clerks watch from a distance for sparks, smoke, or loose equipment, but they are not responsible for inspecting boxcars. Train crews are responsible for inspecting boxcars and locating defects. A Brainerd clerk testified that he previously reported one accident. But, all railroad employees have a general responsibility to report accidents. According to Griffin, the railroad dispatcher is the person directly responsible for reporting derailments and other accidents. Testimony established that, generally, Brainerd clerks are not involved in safety or accident reporting procedures. Instead, the clerks' primary responsibility is customer service.

The Board also adopted the ALJ's finding that customer service will not be affected negatively by transfer of agency services from Brainerd to Superior. Customer service manager Len Forciea testified that

transfer of agency service to the Superior station would eliminate the Brainerd clerks as intermediaries and that this will reduce the opportunity for confusion and mistakes in the transfer of information. Forciea and Griffin testified that the same services provided by the Brainerd agency can be performed at least as efficiently by direct contact with the Superior agency.

There is neither evidence nor allegation that the Superior agency services are unsatisfactory. With regard to ordering boxcars, obtaining shipping information, reporting damages, billing, and assessing demurrage fees, testimony supports the finding that the Brainerd agency will merely be supplanted by the larger, more centralized and modernly equipped Superior agency.

Welfare of the Brainerd employees will not be substantially affected, since only one full-time employee staffs that agency and he is currently eligible for retirement. The Superior agency has a staff of 50 and is available for customer contact 24 hours per day. Brainerd clerks currently have minimal customer contact, and most contact is by telephone. Forciea testified that upon transfer to Superior, customer service problems can be solved by telephone, fax, computer, or mail. Forciea also testified that an agent will be dispatched from Superior in the event that personal customer contact is required.

The ALJ found that customer service will be enhanced by the transfer from Brainerd to Superior:

> Among the modernized procedures currently in use by the railroad are facsimile transmissions, cellular phones, phone to radio transmissions, and computers. The use of this technology allows customers and shippers of the railroad to directly perform the tasks once performed by railroad employees. Thus, the new technology has eliminated many manual processes which previously required an agent to perform.

This finding is supported by the fact that most customers raised no objection to the transfer. The president of Trus Joist MacMillan raised no objection after receiving notice prior to the petition for transfer. Later, the plant manager expressed general written concerns. But Potlach, a customer accounting for 75 percent of the Brainerd agency's business, expressed support for the transfer. Only the TCIU challenges the transfer and takes exception to the findings by the ALJ.

We conclude that, based on testimony at the administrative hearing, the ALJ made an accurate finding that safety and welfare will not be affected by the transfer. We conclude further that public convenience is not reduced but, rather, is enhanced because removing the Brainerd agency as an intermediary reduces the chances for error. Substantial evidence supports the findings adopted by the Board.

## II. Agency Service and Public Convenience under Section 219.85

█ The TCIU urges this court to adopt a test that balances economic necessity against the effect of a transfer on public convenience and necessity. The Brainerd agency currently is a profitable operation. Historically, economic profitability is but one factor for consideration in determining whether transfer of agency service will affect public convenience and necessity. *State ex rel. R.R. & Warehouse Comm'n v. Northern Pac. Ry.*, 90 Minn. 277, 281, 96 N.W. 81, 82 (1903). Public convenience and necessity is an "elastic term," and each case must stand on its own facts. *In re Am. Freight Sys*, 380 N.W.2d at 196–97. We hold that profitability of a freight system is one factor to consider when determining whether the transfer of an agency service affects public convenience and necessity.

█ The TCIU challenges the Board's definition of "agency service." TCIU argues the Board's definition is error as a matter of law since it fails to include "traditional agency tasks." The Board defines agency service as

> services provided to shippers from a railroad's station, including preparation of billing, arranging of car service, arranging switching, and meeting with shippers to resolve service needs.

We conclude that deciding which specific railroad tasks constitute agency service is a

determination that requires administrative expertise. The agency must take into account factors specifically affecting railroads, including changing economic conditions and the advance of technology. We conclude that the Board's adoption of a flexible definition of "agency service" is within the sound discretion of the agency.

█ The TCIU argues that the Board's definition of agency service renders the State of Minnesota and the Board powerless to demand physical agency presence. We believe this concern to be overstated. If the Board determines that, in a particular transfer proposal, the physical presence of a local agent is necessary for public convenience and necessity, then Minn.Stat. § 219.85 prohibits abandonment of the agency station. In this case, the Board's modified order specifically requires that Burlington shall not reduce the quality of service to customers affected by the transfer and, if it fails to comply, the Board shall rehear the matter and determine if the transfer is still warranted.

█ The TCIU predicts that adopting the Board's definition of agency service will lead to the eventual closing of all railroad agency stations, but we decide only the case before us, not matters of broad public policy. Recognition of the proper role of the judiciary requires that we give deference to administrative agencies acting within their areas of expertise. So long as the agency is within the authority delegated by the legislature, broad policy questions on the future of small railroad agencies are within the function of the administrative agency, which can employ experts and hold hearings to examine the effects of a proposed transfer.

## DECISION

The Board did not abuse discretion in adopting the administrative law judge's finding that transfer of Burlington's Brainerd, Minnesota, agency service to Superior, Wisconsin, will not negatively affect public convenience and necessity.

**Affirmed.**