In the Matter of AMERICAN IRON AND SUPPLY COMPANY'S PROPOSED METAL SHREDDING FACILITY IN MINNEAPOLIS, MINNESOTA.

City of Minneapolis, Relator (C1–99–98), Appellant (C3–99–1110),

Minneapolis Park and Recreation Board, Relator (C8–99–101), Appellant (C5–99–1111),

v.

State of Minnesota, Minnesota Pollution Control Agency, Respondent,

American Iron & Supply Co., Respondent.

Nos. C1–99–98, C5–99–1111, C8–99–101 and C3–99–1110.

Court of Appeals of Minnesota.

Jan. 18, 2000.

need for an environmental impact statement.

Jay M. Heffern, Minneapolis City Attorney, Peter W. Ginder, Assistant City Attorney, and Richard G. Mark, Paul C. Thissen, Kerry L. Bundy, Briggs & Morgan, Minneapolis, MN (for appellant City of Minneapolis).

Robert R. Barth, Sarah C. Madison, Best & Flanagan LLP, Minneapolis, MN (for appellant Minneapolis Park & Recreation Board).

Mike Hatch, Attorney General, Ann E. Cohen, Assistant Attorney General, St. Paul, MN (for respondent MPCA).

Frank R. Berman, Julia A. O'Brien, Frank R. Berman, P.A., Minneapolis, MN and Jeffrey A. Olson, Jeffrey A. Olson, PLLC, Minneapolis, MN (for respondent American Iron & Supply Co.).

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

This is a consolidated appeal involving the proposed development of a metal shredding facility on the banks of the Mississippi River in Minneapolis. The City of Minneapolis and the Minneapolis Park and Recreation Board contend that the district court erred in affirming the Minnesota Pollution Control Agency's determination that an environmental impact statement was not necessary for the proposed project. The city and the park board also challenge the agency's issuance of permits for the proposed project. Additionally, American Iron & Supply Co., the company seeking approval to build the facility, challenges the district court's initial determination that three issues required additional findings before the agency could properly issue a negative declaration regarding the

## FACTS

American Iron & Supply Co. ("AIS") is seeking regulatory approval to install a metal shredding facility on its property in Minneapolis on the banks of the Mississippi River. The metal shredder AIS wishes to install, the "Kondirator," is manufactured by Lindemann Maschinenfabrik GmbH. The Kondirator has the capacity to shred up to 100 tons of metal scrap per hour.

In 1994, the Minnesota Legislature passed Minn.Stat. § 116G.151 relating to the proposed installation of the Kondirator ("Kondirator legislation"). The Kondirator legislation required the Minnesota Pollution Control Agency ("MPCA") to complete an environmental assessment worksheet ("EAW") to determine whether an environmental impact statement ("EIS") was necessary before AIS installed the Kondirator. The MPCA completed the EAW on October 9, 1995. On June 11, 1996, following a public notice and comment period, the MPCA issued its findings of fact and conclusions of law. The MPCA determined that the Kondirator did not have the potential for significant environmental effect and that an EIS was not warranted.

The City of Minneapolis and the Minneapolis Park & Recreation Board sought declaratory judgments against AIS and the MPCA in Hennepin County District Court, alleging that the agency's decision was incorrect ("Kondirator I"). Specifically, the city and park board challenged the sufficiency of the data collected by the MPCA and alleged that the MPCA failed to follow the mandates of Minn.Stat. § 116G.151 (1998).

The parties filed cross-motions for summary judgment on the issues raised by the city and park board. The district court heard arguments on the motions and issued an order on March 31, 1998. The district court concluded that three issues

needed further consideration by the MPCA.

Following the remand, the MPCA developed additional information and analyses relative to the remanded issues and opened another public comment period. On December 8, 1998, the MPCA issued a second negative declaration on the necessity of an EIS for the Kondirator project. Because it determined that an EIS was not warranted, the MPCA also issued a storm-water permit and air permit to AIS on December 8, 1998.

The city and park board again filed declaratory judgment actions in Hennepin County District Court ("Kondirator II"). They also petitioned this court for writs of certiorari relative to the MPCA's issuance of the permits. That appeal was stayed pending the outcome of the declaratory judgment actions. On May 7, 1999, the parties' cross-motions for summary judgment were argued before the district court. The district court order dated May 21, 1999, granted the MPCA's motion affirming its negative declaration. Judgment was entered on June 30, 1999.

The city and the park board (hereinafter "appellants") filed timely appeals of the judgment, and those appeals were consolidated with the appeals relative to the issuance of the permits. Additionally, AIS seeks review of the Kondirator I court's remand.

## ISSUES

1. Was the MPCA's decision not to require an EIS arbitrary, capricious, or contrary to law?

2. Was the MPCA's decision to issue permits to AIS for the Kondirator project arbitrary, capricious, or contrary to law?

3. Did the Kondirator I court err in remanding the three issues to the MPCA for additional consideration?

## ANALYSIS

### I. MPCA's negative declarations

#### A. Standard of review

 When reviewing a district court's summary judgment order affirming an agency's negative declaration regarding the need for an EIS,

> this court reviews the agency decision to determine if it is "unreasonable, arbitrary or capricious, with review focused on the legal sufficiency of and factual basis for the reasons given."

*National Audubon Soc'y v. Minnesota Pollution Control Agency,* 569 N.W.2d 211, 215 (Minn.App.1997) (quotation omitted), *review denied* (Minn. Dec. 16, 1997). We will affirm the agency's decision if it was not arbitrary or capricious "even though [the court] may have reached a different conclusion had it been the fact-finder." *White v. Minnesota Dep't of Natural Resources,* 567 N.W.2d 724, 730 (Minn.App. 1997), *review denied* (Minn. Oct. 31, 1997). We review the administrative record and determine whether there is substantial evidence supporting the agency finding. *Iron Rangers for Responsible Ridge Action v. Iron Range Resources,* 531 N.W.2d 874, 880 (Minn.App.1995), *review denied* (Minn. July 28, 1995).

 The legislature passed special legislation relative to the EAW completed by the MPCA in this case. Minn.Stat. § 116G.151 (1998). Typically, issues of statutory construction are reviewed de novo by appellate courts. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). But this court has previously stated:

> Although we are not bound by the agency's interpretation of the law "an agency's interpretation of the statutes it administers is entitled to deference and should be upheld, absent a finding that it is in conflict with the express purpose of the Act and the intention of the legislature." *Geo. A. Hormel & Co. v. Asper,* 428 N.W.2d 47, 50 (Minn.1988). We have held that when an agency reason-

ably interprets a statute, it is the role of the legislature or the supreme court, and not the role of this court, to overrule that interpretation.

*In re University of Minn.*, 566 N.W.2d 98, 103 (Minn.App.1997) (citing *In re Hyman Freightways, Inc.*, 488 N.W.2d 503, 505 (Minn.App.1992)). Because Minn.Stat. § 116G.151 falls within the purview of the MPCA, the agency's interpretation will be upheld if it is reasonable.

## B. Challenges to the MPCA's negative declarations

Appellants have raised numerous specific challenges to the MPCA's negative declaration on appeal. Underlying each issue raised by appellants is an allegation that the MPCA failed to comply with Minn. Stat. § 116G.151 and the applicable administrative rules.

### 1. Consideration of actual "operating data"

■ Appellants contend that the negative declaration should be vacated because the MPCA failed to properly consider actual "operating data" from other Kondirators or metal shredders. The Kondirator legislation requires the MPCA to "obtain any existing reports or documents from a governmental entity or project proposer that analyzes or evaluates the potential hazards * * * ." Minn.Stat. § 116G.151(g). Appellants claim that the MPCA's search for operational data was not sufficiently exhaustive.

The record reflects that the MPCA did make a sustained attempt to obtain what it deemed to be useful and appropriate documentation. It sought documents from AIS, the manufacturer of the Kondirator, the EPA, five state governments, the environmental regulators of six foreign governments, and traveled to England to visit a Kondirator facility. The MPCA determined that the limited information that it was able to obtain was not useful. It contends that actual operational data is useful only to the extent that it comes from a facility shredding a similar amount and type of material. Additionally, the facility must have similar pollution control mechanisms.

The MPCA determined that it was unable to obtain "any existing emissions information that would provide a complete data set suitable for use in modeling emissions from the Kondirator." This is a technical judgment by an agency with expertise in the area of environmental review and deserves deference. *See Cable Communications Bd. v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984) (stating court shows deference to agency's conclusions in its area of expertise). This decision was not arbitrary or capricious.

### 2. Consideration of "similar facilities"

■ Minn.Stat. § 116G.151(g) also requires the MPCA and its expert to "consider any actual experience at similar facilities" in preparing the risk assessment. The appellants contend that this did not occur. The MPCA concluded, however, that similar facilities appropriate for the risk assessment do not exist because of the difference in feedstock and pollution control mechanisms at other facilities.

The language of the statute, i.e., "similar facilities," invites interpretation by the agency. The legislature could have required the agency to consider actual experience at "other," "any," or "all" metal shredding facilities. But the use of the word "similar" requires the agency to determine which, if any, existing facilities were in fact similar to the proposed Kondirator for the purposes of an environmental review. The agency's decision that no similar facilities exist was not unreasonable. *See Geo. A. Hormel*, 428 N.W.2d at 50 (stating agency's interpretation of statutes it administers is entitled to deference); *White*, 567 N.W.2d at 730 (appellate courts will affirm agency on fact or technical judgments when the agency's decision is reasoned).

### 3. Cumulative Effects

■ Appellants contend that the MPCA failed to properly consider the cumulative effects of the potential contaminants of concern identified with the Kondirator project and the contaminants of concern already existing in soil surrounding the site. The Kondirator I court agreed with the appellants and remanded this issue to the MPCA for additional consideration. The court noted that the degree to which potential emissions of contaminants of concern into the air, soil, and water, "when cumulated with the existing contaminants in the surrounding air, soil, and water," constituted a potential risk to human health that was not adequately addressed by the MPCA during the initial assessment.

Although the MPCA and AIS contend that the Kondirator I court erred in ordering the remand on this issue, they nonetheless did obtain additional information. AIS provided the MPCA with additional analysis from its consultant, Barr Engineering, and the MPCA commissioned a study by RUST/Earth Tech. Appellants contend that this new information is still insufficient because it does not include actual soil samples from the AIS property and other areas near the facility.

The MPCA's decision to issue a negative declaration in light of this alleged deficiency in the record was not contrary to law. The Kondirator legislation requires the MPCA to consider the "compatibility of the existing operation and proposed operation with other existing uses." Minn.Stat. § 116G.151(c)(10). Additionally, Minn. R. 4410.1700, subp. 7(B), requires the MPCA to consider "cumulative potential effects of related or anticipated future projects" in determining whether potential significant environmental effects exist. The statute and rule do not go beyond this in setting forth exactly how the MPCA is to carry out these directives. Because of the deferential standard of review of an agency's technical decisions, we do not find the MPCA's decision not to order soil samples or conduct more geographically specific analysis to be arbitrary or capricious. *See Geo. A. Hormel,* 428 N.W.2d at 50; *White,* 567 N.W.2d at 730 (setting out standard of review).

### 4. Use of Material Safety Data Sheets

■ Appellants challenge the MPCA's use of material safety data sheets in its risk assessment. The Kondirator I court affirmed the MPCA's decision to use the material safety data sheets information with one exception – the issue of feedstock coatings. The material safety data sheets do not include information about the coatings that may be on the feedstock. Appellants argue that fragmentation will occur during the shredding process and that coatings on the feedstock will be emitted from the Kondirator. The MPCA and ICF Kaiser, the toxicology consultant retained by the MPCA, examined this issue and determined that coating emissions do not have the potential for a significant environmental effect. *See* Minn.Stat. § 116G.151(g) (requiring the MPCA to "retain an expert in the field of toxicology who is capable of properly analyzing the potential effects and content of any airborne particulates, fugutive emissions, and dust that could be produced by a metal materials shredding project").

AIS developed a feedstock control procedure to reduce the amount of coated materials it will shred. The vast majority of its feedstock is not coated, and most of the coated feedstock is non-toxic. Furthermore, to the extent that any coating fragmentation occurs, the MPCA determined that the fabric filter to be installed with the Kondirator would reduce or eliminate any emissions.

The MPCA did not act arbitrarily in concluding that coating particulate emissions do not pose a potential significant environmental effect because, even if coatings were occasionally emitted, the fabric filter would contain them. *National Audubon* Soc'y, 569 N.W.2d at 217 (noting agency properly considered specific miti-

gation measures in finding no significant environmental impact); *Iron Rangers,* 531 N.W.2d at 881 (noting it was not error for agency to consider specific mitigation measures of environmental effects in determining that an EIS is not required).

### 5. Mercury and PCB emissions

 One of the issues remanded by the Kondirator I court was whether materials containing mercury and PCBs were likely to be processed by AIS. The MPCA reconsidered this issue and determined AIS would not be processing materials that contain mercury and PCBs. Appellants challenge the MPCA's decision on this issue.

AIS intends to identify and reject feedstock that may contain mercury or PCBs. Furthermore, according to AIS, mercury and PCBs are most often found in automobile hulks and "white goods." AIS does not intend to process automobile hulks, and it only processes white goods (e.g., domestic appliances) after the collection agency, principally the City of Minneapolis, removes all potentially toxic materials pursuant to various Minnesota statutes. *See* Minn.Stat. §§ 115.071, 115A.932, 115A.9561, 116.072 (1998). The MPCA relied on AIS's feedstock control procedures and the MPCA's own analysis of potential environmental effects to determine that mercury and PCBs were not likely be an issue for the Kondirator project.

This is another technical judgment made by the MPCA. The MPCA appears to have reviewed all of the information available to it and responded to comments on this issue during the comment period. It determined that mercury and PCBs were not likely to be present in the materials processed by AIS, and, therefore, were unlikely to cause significant environmental effects. Furthermore, even though the MPCA concluded that mercury and PCBs did not pose significant environmental effects, it included mercury and PCB emission controls in the permits issued to AIS. This mitigation measure appears to go beyond what is typically required for the agency to issue a negative declaration. *See National Audubon Soc'y,* 569 N.W.2d at 217; *Iron Rangers,* 531 N.W.2d at 881.

### 6. Efficacy of the fabric filter

 Appellants also challenge the MPCA's negative declaration claiming that the fabric filter AIS has agreed to install in the Kondirator does not sufficiently limit stack emissions. Specifically, appellants point to the fact that absent the use of the filter, the emissions significantly exceed permissible risk thresholds that would prevent the issuance of permits. The projected emissions without the filter are 9.98 pounds per hour. Based on a "warranty" provided by the filter manufacturer, the emission will be reduced to 0.43 pounds per hour. This figure falls below the permissible risk threshold by 0.06 pounds per hour. Appellants contend that because there is little margin for error with the filter mitigation, additional study or testing is required.

The Kondirator I court considered this issue a "close one," but it decided that because of the standard of review, the MPCA should be affirmed. The record establishes that significant consideration was given to the issue of emissions and AIS's ability to mitigate potential air emissions with the fabric filter. Although not all of the evidence supports the conclusion that emissions will not be a potential problem, there is substantial evidence in the record to support the agency's ultimate determination. *See Iron Rangers,* 531 N.W.2d at 881 (stating "[w]here there are technical disputes and uncertainties, the court must assume that the agency * * * has exercised its discretion appropriately").

### 7. Chromium emissions

 The risk assessment prepared in 1995 identified chromium as the only contaminant of concern to exceed the "hazard benchmark" established for the risk assessment. The city contends that because chromium emissions were projected to exceed the hazard benchmark by a factor of

four, the MPCA is required to proceed with an EIS. Recognizing that the chromium level exceeded the benchmark, the MPCA considered, but ultimately rejected, this as a potential significant environmental effect.

The MPCA points to the conservative nature of the calculations that form the basis of the risk analysis. It also relied on a comment it received from David Grigal, Ph.D., a professor in the Department of Soil, Water, and Climate at the University of Minnesota. Dr. Grigal concluded that the chromium calculations were unnecessarily conservative because the natural rate of chromium accumulation exceeds the threshold initially proposed by the MPCA. He also opined that chromium emissions would not be a significant concern for the Kondirator project. The MPCA explained its decision that chromium emissions were not a concern in its 1996 and 1998 findings. There is substantial evidence in the record that supports this conclusion. It is a reasoned technical judgment that is within the agency's discretion. *Id.*

### 8. Fugitive emissions

█ Another issue remanded by the Kondirator I court requires the MPCA to reconsider the extent of the potential for environmental effects from dust and/or fugitive emissions from raw material storage and product storage. Appellants contend that the MPCA failed to properly reconsider this issue.

Although neither the MPCA nor AIS obtained or reviewed any actual operating data from other metal shredders following the remand, the MPCA's December 8, 1998 findings indicate that this issue was indeed reconsidered by the MPCA. Additional information was reviewed and new conclusions were adopted. For example, the MPCA determined in its "best professional judgment that emissions from the product pile will not have any significant impact on ambient air quality standards or risk levels." This conclusion was based on additional documents obtained by the MPCA from the manufacturer of the cleaning system and the MPCA's independent technical review of the system. AIS's planned use of the cascade cleaning system is discussed in detail in the findings.

The MPCA analyzed the information it obtained and determined that there was no significant risk of emissions from the product pile. Furthermore, the MPCA determined that to the extent any dust might be found, it can be controlled by a zero opacity permit restriction and wetting, use of tarps, or enclosing the product pile. The MPCA's decision appears to be reasoned and not arbitrary or capricious. *National Audubon Soc'y*, 569 N.W.2d at 215.

### 9. Failure to consider the project as a whole

█ The city contends that remand for an EIS is warranted because it alleges that the MPCA examined individual concerns separately and failed to consider the environmental impact of the Kondirator as a whole. But there is substantial evidence in the record to support the conclusion that, at least by the time the second negative declaration was made, the MPCA considered the project as a whole.

As required by the statute, the MPCA hired a toxicology expert to prepare a risk assessment. Following the remand, an additional study was commissioned by the MPCA to further evaluate the potential environmental impact of the project. Additionally, the MPCA received and responded to numerous comments from interested parties and collected the information necessary to perform modeling and prepare the EAW.

In order to consider the project as a whole, the MPCA had to initially consider each issue individually. The MPCA concluded, "the *proposed project* does not have the potential for significant environmental effects." This indicates that the project was ultimately considered as a whole. This conclusion is not arbitrary or capricious and is based on substantial evidence. *Id.*

### 10. Sufficiency of information gathered by the MPCA

■ Appellants also contend that the agency did not have sufficient information to make a reasonable decision about the potential for significant environmental impacts as required by Minn.Stat. § 116G.151(f). This paragraph of the statute requires the agency to make a positive declaration on the need for an EIS if the agency determines that insufficient information exists. Once again, the language of Minn.Stat. § 116G.151(f) invites the agency to interpret what is sufficient information. The MPCA determined that sufficient information existed to make a reasoned decision regarding potential significant environmental effects prior to issuing both negative declarations. *See Geo. A. Hormel*, 428 N.W.2d at 50 (stating agency's interpretation of statutes it administers is entitled to deference).

■ This court will affirm an agency's determination that sufficient information exists upon which to base a reasoned decision if there is substantial evidence to support it. *Iron Rangers*, 531 N.W.2d at 880. Substantial evidence is relevant evidence that a "reasonable mind might except as adequate to support a conclusion." *National Audubon Soc'y*, 569 N.W.2d at 215 (quoting *Cable Communications Bd.*, 356 N.W.2d at 668). It must be more than a scintilla, some, or any evidence. *Id.*

Substantial evidence exists to support the MPCA's decision. The material generated by the MPCA and interested parties relative to this project is voluminous and the time invested appears to be substantial. The record demonstrates that considerable review and analysis occurred and environmental modeling was performed. Although some of the documents contained within the record do not support the MPCA's negative declaration, we cannot conclude that the agency exercised its will instead of its judgment. *See Trout Unlimited, Inc. v. Minnesota Dep't of Agric.*, 528 N.W.2d 903, 907 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995) (stating an agency's review is arbitrary or capricious if it "represents the agency's will, rather than its judgment"). Based on the entire record, it is apparent that the MPCA acted in good faith and considered all of the information available to it. *National Audubon Soc'y*, 569 N.W.2d at 217. The MPCA, at least after the remand, did not ignore issues it should have addressed or ignore evidence on an issue that was addressed. *See White*, 567 N.W.2d at 735 (stating to defeat a summary judgment motion citizens seeking to compel DNR to prepare EIS must present evidence DNR failed to prepare an appropriate EAW either by avoiding an issue or ignoring evidence about an issue). The mere fact that some conflicting evidence exists does not in and of itself require a positive declaration on the need for an EIS.

Because of the deferential standard of review we must apply in this case, we hold that the MPCA did not act arbitrarily, capriciously, or contrary to law in determining that an EIS is unnecessary for the Kondirator project. There is little question that additional assessment could be performed. But despite the legitimate concerns about the project that appellants and others have expressed, there is substantial evidence to support the MPCA's negative declaration.

### II. MPCA's issuance of permits to AIS

■ This court reviews decisions by the MPCA to issue permits in light of Minn.Stat. § 14.69(a)-(e) (1998). *University of Minn.*, 566 N.W.2d at 103. Appellants bear the burden of proof relative to this issue. *Id.* (citations omitted).

> An agency's decision may be reversed if it is determined to be unsupported by substantial evidence, arbitrary or capricious, or affected by other error of law.

*Id.* (citing Minn.Stat. § 14.69).

■ The specific challenge to the permits raised by the appellants involves the interplay between the MPCA's issuance of the permits and its negative declaration.

The appellants contend that the MPCA failed to assess certain potential risks and chose to rely on mitigation to prevent those potential risks from rising to the level of significant environmental effects. The appellants rely on *Pope County Mothers v. Minnesota Pollution Control Agency*, 594 N.W.2d 233 (Minn.App.1999), as support for this argument. In *Pope County Mothers*, this court held that if a potential significant environmental effect is likely to exist, it must be considered and assessed before the Responsible Governmental Unit (RGU) issues a negative declaration. *Id.* at 237–38. The RGU cannot simply defer the issue to later permitting and monitoring. *Id.* at 237.

Appellants point to the permits as they relate to mercury, PCBs and fugitive emissions and allege that the MPCA is improperly deferring mitigation. The MPCA determined that these contaminants of concern are not likely to be emitted by the Kondirator, and, therefore, need not be assessed. The court in *Pope County Mothers* held that "the MPCA must still consider the extent of the environmental effects *likely* to result and how those effects could be mitigated." *Id.* at 238 (emphasis added). The MPCA and AIS contend that because of AIS's feedstock control procedures and the pollution control equipment being installed with the Kondirator, environmental effects from mercury, PCBs, and fugitive dust are not likely to occur. The permit conditions are specific precautions adopted to address potential, but unlikely, specific environmental impacts from the Kondirator facility. *See National Audubon Soc'y*, 569 N.W.2d at 217.

Because we hold that the MPCA properly assessed the potential risks presented by the Kondirator project, consideration of mitigation was appropriate. The MPCA's decision to issue storm-water and air permits to AIS is supported by substantial evidence and is not arbitrary, capricious, or contrary to law. *University of Minn.*, 566 N.W.2d at 103.

## III. AIS's Claims

■ AIS contends that the *Kondirator I* court erred in ordering the remand following the first negative declaration. Because we conclude that the agency's second negative declaration was within its discretion and that the issuance of the permits for the projects was appropriate, this issue is moot.

## DECISION

The MPCA's negative declaration regarding the necessity of an EIS in this case was not arbitrary or capricious. The negative declaration is supported by substantial evidence in the agency record and was made following significant consideration by the MPCA. The agency's decision to issue permits relative to the Kondirator project was appropriate in light of its negative declaration and did not improperly defer mitigation. Finally, our decision regarding the negative declaration and permits makes AIS's challenge of the initial remand moot.

**Affirmed.**